An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-963

Filed 5 August 2026

Union County, No. 23JT000171-890

IN THE MATTER OF: L.D.B.

Appeal by Respondent-Mother from order entered 6 May 2025 by Judge Erin S. Hucks in Union County District Court. Heard in the Court of Appeals 14 July 2026.

*Garron T. Michael, for respondent-appellant mother.*

*The Fitzgerald Dwyer Law Firm, P.C., by Peter F. Dwyer, for respondent-appellee father, no brief filed.*

*Jonathan McGirt, for petitioners-appellees.*

*The Austin Law Firm, by Leah Austin, for the Guardian ad Litem, no brief filed.*

PER CURIAM.

I.    Background

On 30 January 2017, Respondent-Mother ("Mother") gave birth to Debra.[1] Shortly after, in March 2018, Debra's grandmother ("Grandmother") picked up

---

[1] A pseudonym is used to protect the identity of the juvenile.

Mother, Debra, and Respondent-Father ("Father"), where she observed unsafe living conditions, including drug paraphernalia, all in reach of the child. Mother and Father had a history of drug abuse, including criminal convictions, and had a history of domestic abuse. Mother and Father received further criminal charges while Debra was not in their custody.

After staying at Grandmother's home, Grandmother suspected Mother exhibited withdrawal symptoms from lack of drug use. Mother received further criminal charges during this time. Grandmother reached out to her sister, Mrs. K, to take care of Debra as she was being treated for cancer at the time. Mrs. K, with her husband ("petitioners"), filed for and was granted Temporary Emergency Custody on 7 June 2018 in Union County. From then on, Debra resided with petitioners.

On 10 June 2018, Debra's custody case was transferred from Union County back to Edgecombe County, where Mother resided, and Debra was born. After three hearings at Edgecombe County District Court, petitioners were granted primary physical and legal custody of Debra, with the order entered on 8 March 2019. The order authorized petitioners to allow supervised visitation from Mother under whatever conditions they believed were in the best interest of Debra.

Mother then made only two supervised visits of Debra. From 2018 to 2022, petitioners received only thirteen texts from Mother inquiring about Debra, with seven of those being in 2018. Grandmother allowed Mother to speak to Debra on one occasion, without petitioners' permission. No in-person visitation occurred from 2019

to 2023. Petitioners chose not to reach out to Mother or arrange any in person visitation as they believed Mother failed to rehabilitate and ameliorate her living conditions and it was in Debra's best interest to not be reunited with Mother.

On 15 September 2023, petitioners filed a petition to terminate Mother's and Father's parental rights over Debra. In her answer, Mother denied the allegations of poor living conditions, drug paraphernalia in reach of the child, and all substantive allegations of insufficient living standards for a child. Mother also claimed petitioners had deliberately kept her from Debra. Petitioners claimed to have been following the court's order and doing what they believed was in the best interest of Debra by refusing contact with Mother, who had still been using drugs and in a relationship with Father.

On 24 September 2018, Mother submitted to a drug test and tested positive for opiates, including fentanyl. Subsequent testing confirmed the presence of fentanyl in Mother's system.

Four orders were entered during hearings between November 2023 and March 2024, with final evidentiary hearings held on 9 January 2025, 20 March 2025, and 3 April 2025. Mother and petitioners presented evidence, and the trial court concluded that there was sufficient evidence demonstrating termination of parental

rights was in the best interest of the child. Mother timely appeals the court's findings and order terminating parental rights.[2]

## II.     Discussion

Mother's counsel has complied with Rule 3.1(e) of the Rules of Appellate Procedure in filing a no-merit brief. Thus, we conduct an independent review of the issues raised in the no-merit brief. *See In re L.E.M.*, 362 N.C. 396, 402 (2019). Mother's counsel identified two potential issues for our review: (1) whether the trial court erred by concluding that grounds existed to terminate Mother's parental rights; and (2) whether the trial court erred by concluding that it was in Debra's best interest to terminate parental rights.

"We review a district court's adjudication under N.C.G.S. § 7B-1111(a) to determine whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusions of law." *In re J.S.*, 374 N.C. 811, 814 (2020) (cleaned up). "Unchallenged findings of fact are deemed supported by competent evidence and are binding on appeal." *Id.* If this Court affirms "that a particular ground for termination exists . . . we need not review any remaining grounds." *Id.* at 815. A neglected juvenile is "[a]ny juvenile less than 18 years of age . . . whose parent . . . does any of the following:"

> a.     Does not provide proper care, supervision, or discipline.
> b.     Has abandoned the juvenile . . . .

---

[2] Father did not file a notice of appeal and is not a party to this action.

      c.     Has not provided or arranged for the provision of necessary medical or remedial care.

      d.     Or whose parent . . . has refused to follow the recommendations of the Juvenile and Family Team . . . .

      e.     Creates or allows to be created a living environment that is injurious to the juvenile's welfare.

N.C.G.S. § 7B-101(15).

Here, the court found that there was clear, cogent, and convincing evidence that Mother had neglected Debra based on the evidence presented. While Mother claims that petitioners failed to allow visitation, she admits that Debra was removed due to her own substance abuse and failure to provide proper living conditions for her child. Additionally, petitioners offered to allow Mother to visit Debra if she provided documentation that she was progressing in her rehabilitation efforts, which Mother failed to do. Mother had gone at least six years without seeing Debra in person at the time of the termination hearing due to not satisfying the conditions of the custody order. Mother failed to provide any significant support to Debra while she was in petitioners' custody and continued to engage in substance abuse, was convicted of crime, and remained in a relationship marked with domestic abuse. Mother made a total of seven attempts to initiate contact with Debra in 2018 and substantially decreased efforts to communicate with petitioner Mrs. K prior to the termination hearing. While Mother has made considerable efforts in recent years to rehabilitate, the court found that the evidence supported that Debra was a neglected juvenile by clear, cogent, and convincing evidence. We see nothing in the record that contravenes

such a finding. Therefore, we find the court did not err in determining Debra was a neglected juvenile contemplated by N.C.G.S. § 7B-1111.

Upon determining that there are grounds for termination pursuant to N.C.G.S. § 7B-1111, the court then determines whether the termination is in the best interests of the child. N.C.G.S. § 7B-1110(a). A "trial court's determination of a child's best interests . . . is reviewed only for abuse of discretion." *In re J.S.*, 374 N.C. 811, 822 (2020). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re B.W.*, 190 N.C. App. 328, 336 (2008). The trial court considers the following factors when determining the best interest of the child:

> (1) The age of the juvenile.
> (2) The likelihood of adoption of the juvenile.
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
> (4) The bond between the juvenile and the parent.
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
> (6) Any relevant consideration.

N.C.G.S § 7B-1110(a).

Here, the court found that the juvenile is eight years old and has spent most of her life living with petitioners, recognizing them as her parents; petitioners are highly likely to adopt Debra given they have already filed a petition for adoption; Mother has admitted she has no bond with the child; the quality of bond between

Debra and petitioners is very strong, with Debra considering them her family; and other relationships with petitioners' household, including their daughter, are strong. We see nothing in the record or the court's findings that demonstrate the trial court abused its discretion in determining the best interests of the child.

## III.    Conclusion

After a careful and independent review of the record and the issues presented in the no-merit brief, we conclude the trial court did not err in the required findings and did not abuse its discretion in terminating Mother's parental rights.

AFFIRMED.

Panel consisting of Judges ARROWOOD, HAMPSON, and FREEMAN.

Report per Rule 30(e).